UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| B. AND E.F. MALDONADO,<br><br>           Plaintiffs,<br><br>      v.<br><br>MORGAN HILL UNIFIED SCHOOL<br>DISTRICT,<br><br>           Defendant. | Case No.  21-cv-06611-VKD<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFFS'<br>MOTION FOR ATTORNEYS' FEES<br>AND COSTS**<br><br>Re: Dkt. Nos. 23, 28 |

E.F. and B., his parent, (collectively, "Plaintiffs") move for an award of attorneys' fees and costs pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B), incurred in connection with administrative proceedings and in this action. Dkt. Nos. 1, 23. Defendant Morgan Hill Unified School District ("District") opposes the motion. Dkt. No. 24.

All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 8, 14. On April 26, 2022, the Court heard argument on Plaintiffs' motion for an award of attorneys' fees and costs. Dkt. No. 43. Having considered the parties' submissions and arguments, the Court grants in part and denies in part Plaintiffs' motion, and awards Plaintiffs $37,102.50 in attorneys' fees and $402 in costs.

## I.      BACKGROUND

This action arises out of a dispute between Plaintiffs and the District over the educational support provided to E.F., a student in the Morgan Hill Unified School District. The IDEA requires states receiving federal financial assistance to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE"). 20 U.S.C. § 1400 et seq. A

parent or guardian who believes that a school district is not complying with its obligations under the IDEA may request an impartial due process hearing before an administrative law judge ("ALJ"), among other remedies.  20 U.S.C. § 1415(f).  A parent or guardian who is a prevailing party may file an action in federal district court seeking an award of reasonable attorneys' fees and costs.  20 U.S.C. § 1415(i).

### A.    Case 1

Plaintiffs filed their first administrative complaint, OAH Case No. 20200120801, against the District on December 23, 2020 ("Case 1").  Dkt. No. 23 at 4.  This complaint asserted claims beginning with the 2017-18 school year and identified nine issues that required resolution.  *Id.*  On February 17, 2021, the parties participated in mediation, but that effort was unsuccessful.  *Id.*

On February 22, 2021, an ALJ held a prehearing conference.  *Id.*  At the conference, the District argued that nearly all of Plaintiffs' claims were barred by the statute of limitations and that, accordingly, whether an exception to the statute of limitations applied, *see* 20 U.S.C. § 1415(f)(3)(D), should be the first issue adjudicated at the due process hearing.[1]  Dkt. No. 24 at 7.  In response, Plaintiffs requested a continuance of the hearing so that they could correct some of the dates in the complaint.  Dkt. No. 23 at 4; Dkt. No. 24 at 7.  The ALJ denied Plaintiffs' request on the ground that Plaintiffs failed to show good cause for a continuance.  Dkt. No. 24-2, Ex. 5.  Plaintiffs then requested that the ALJ dismiss the complaint without prejudice, and the ALJ granted this request.  *Id.*

One month later, Plaintiffs filed a motion to reconsider the dismissal, which was denied.  *Id.*, Ex. 6.  In denying the request for reconsideration, the ALJ characterized the relevant proceedings as follows:

> Student's counsel did not file a pre-hearing conference statement identifying her witnesses and exhibits.  Morgan Hill timely filed a prehearing conference statement and raised a statute of limitations defense on numerous issues.

---

[1] The statute of limitations for filing due process hearing requests in California is two years, consistent with federal law.  Dkt. No. 23-1 ("ALJ Decision"); *see also* 20 U.S.C. § 1415(f)(3)(C); *Avila v. Spokane Sch. District 81*, 852 F.3d 936 (9th Cir. 2017).

United States District Court
Northern District of California

1
2
3
4
5

At the Prehearing conference, the ALJ discussed bifurcating the first day of hearing, March 2, and addressing whether eight issues should barred [sic] by the statute of limitations and therefore be dismissed. Student's counsel wanted to avoid bifurcating the hearing, and spontaneously asked to orally amend Student's due process request to make some corrections. The ALJ denied the impromptu oral motion to amend the complaint because it was not timely, it was not in writing, it was not accompanied by a proposed amended complaint, and it did not give proper notice given [sic] to opposing counsel.

6
7
8
9
10

After the ALJ denied the oral motion to amend the due process request, Student's counsel requested a two-week continuance of the hearing so that she could amend the complaint and request another continuance of that hearing. Student did not have a proposed due process complaint ready to file. The ALJ determined there was no good cause to continue the hearing. Student's counsel stated on the record she would withdraw her complaint and refile a new complaint. The ALJ agreed to dismiss Student's [complaint] without prejudice.

11
12
13
14
15
16
17
18

In her moving papers for reconsideration, Student's counsel claims the ALJ was not impartial and did not allow her to explain her position during the 25-minute prehearing conference. Those claims are unfounded. At the beginning of the prehearing conference, Student's counsel answered ready for the due process hearing, actively participated in discussions, and within 25 minutes, voluntarily chose to withdraw her due process hearing request on the record. The ALJ granted her request without prejudice. Since that time, Student's counsel had the opportunity to file a new due process request with a newly assigned case number and with corrected dates but has not done so. Student's counsel's request seeking an Order to undo her own withdrawal is frivolous. The ALJ acted impartially when she scheduled the bifurcated due process hearing and denied oral motions which did not comply with the IDEA and the prehearing conference orders.

19

. . .

20
21
22
23
24
25
26
27

Student's counsel demonstrated a lack of preparation and organization when she was not prepared to go forward with the due process hearing with bifurcated issues, and withdrew the complaint at the prehearing conference. Student's counsel demonstrated a lack of preparation seeking to reverse that decision and revive the prior older due process complaint, unaltered, and without changes, without filing a corrected complaint in a new action. Student's moving papers confused the issues and the legal standards allowing the amendments of due process complaints. Student's attempt to orally amend the complaint at the prehearing conference, and the failure to rewrite and correct the complaint 30 days later, demonstrated a lack of preparation and organization. These factors did not demonstrate an improper purpose and did not reach the level of subjective bad faith on the part of Student's counsel.

*Id.* at ECF 123-124.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.     Case 2**

On April 5, 2021, Plaintiffs filed a second administrative complaint, OAH Case No. 2021040203, against the District ("Case 2").  Dkt. No. 23 at 4-5.  Plaintiffs asserted that the District denied E.F. a FAPE during the 2017-18, 2018-19, 2019-20, and 2020-21 academic years. *Id.*  It raised the same nine issues Plaintiffs raised in Case 1 (with dates amended) and eight additional issues.  *Id.*

The ALJ held a due process hearing over six days in June 2021.  During the hearing, the ALJ clarified and reorganized the issues presented for decision as 40 sub-issues, including two sub-issues addressing whether the two-year statute of limitations should be extended.  Dkt. No. 23-1 at 2-6.  No party objected to the ALJ's list of issues.  The hearing proceeded in two phases.  Dkt. No. 24 at 8.  Phase 1 addressed whether Plaintiffs' claims were barred by the applicable two-year statute of limitations.  *Id.*  Phase 2 addressed the merits of the claims not subject to the time bar.

The ALJ issued her decision in Case 2 on July 19, 2021.  Dkt. No. 23-1.  The ALJ held that Plaintiffs had not demonstrated that the two-year statute of limitations should be extended, and that therefore, "the time period at issue in this matter was determined to be April 5, 2019, through April 5, 2021."  *Id.* at ECF 15-16.  Specifically, the ALJ concluded that alleged violations occurring before April 5, 2019—about half of the issues presented—were time barred.  *Id.* at 15. With respect to the remaining issues, the ALJ decided in favor of the District on all but two issues. The ALJ decided that: (1) the "Student proved . . . that Morgan Hill denied Student a FAPE by impermissibly exiting Student from special education . . ." during the 2020-2021 school year (issue 5(d)), and (2) the District "denied Student a FAPE by failing to assess Student" in several areas (issue 5(a)).  *Id.* at 18-19.  The ALJ ordered the following relief:

1) The District must reinstate E.F. as eligible for special education under the categories of specific learning disabilities and other health impairment, pending further consideration by the IEP team.

2) The District must offer a plan to assess E.F. in the areas of psychoeducation, speech and language, and occupational therapy, and may proceed with the assessment if

1            E.F.'s parent does not consent to the plan.

2         3)   The District must hold an IEP team meeting to review the assessments.

3         4)   The District must provide E.F. 35 hours of individual specialized academic

4             instruction, outside of the regular school day, by a credentialed special education

5             teacher for the 2021-2022 academic year.

6 *Id.* at 51-52.

7      No party has appealed the ALJ's decision.  Dkt. No. 23 at 5.

## II.    LEGAL STANDARD

9      The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees

10 as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C.

11 § 1415(i)(3)(B)(i); *Aguirre v. Los Angeles Unified School Dist.*, 461 F.3d 1114, 1117 (9th Cir.

12 2006).

13      To be considered a "prevailing party" a parent must have achieved some "material

14 alteration of the legal relationship of the parties."  *Shapiro v. Paradise Valley Unified Sch. Dist.*

15 *No. 69*, 374 F.3d 857, 865 (9th. Cir. 2004) (applying definition of "prevailing party" in

16 *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604

17 (2001) to the IDEA's attorneys' fees provision).  "A prevailing party is one who succeeds on any

18 significant issue in litigation which achieves some of the benefit the parties sought in bringing the

19 suit."  *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007) (citing

20 *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th Cir. 1994)).  The

21 success cannot be *de minimis* and must be causally linked to the litigation brought.  *Id.* (citing

22 *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1034–37 (9th Cir. 2006)).

23      As a general matter, a determination of the amount of a reasonable attorneys' fee begins

24 with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly

25 rate"—the lodestar calculation.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on*

26 *other grounds by Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist*., 489 U.S. 782 (1989).

27 The party seeking an award of fees must submit evidence supporting the hours worked and rates

28 claimed.  *Id.*

United States District Court
Northern District of California

If a parent achieves only partial success, the court must also consider the "degree of success" achieved in order to determine the reasonable attorneys' fees to which the parent is entitled. *Aguirre*, 461 F.3d at 1119–20 (applying the "degree of success" standard announced in *Hensley* to attorneys' fee awards under the IDEA). "A reduced award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 416 U.S. at 440. "In some circumstances, even a plaintiff who formally 'prevails' . . . should receive no attorney's fees at all." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992). In addition, the court may reduce an award of attorneys' fees where the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy. 20 U.S.C. § 1415(i)(3)(f)(i).

## III. DISCUSSION

Before addressing the merits of Plaintiffs' fee request, the Court must address two threshold issues: (1) whether Plaintiffs are a prevailing party; and (2) whether Plaintiffs have met their burden of submitting adequate billing records establishing entitlement to an award of attorneys' fees.

### A. Prevailing Party

A plaintiff must be a "prevailing party" to recover attorneys' fees. *Hensley*, 461 U.S. at 433. This is a "threshold determination"—if Plaintiffs are not a prevailing party they are not entitled to attorneys' fees. *Id.* Plaintiffs contend that E.F.'s parent was the prevailing party in both Case 1 and Case 2. Dkt. No. 29 at ECF 11-13. The District agrees that Plaintiffs prevailed on two of the issues identified by the ALJ in Case 2, but it argues that Plaintiffs' limited degree of success should be taken into account in calculating a reasonable attorneys' fee, if any such fee is awarded. Dkt. No. 24 at 5-6, 20-21. Because there is no dispute that Plaintiffs prevailed on two of the issues in Case 2, Plaintiffs have met the threshold requirement to show that they are a prevailing party.

### B. Adequacy of Plaintiffs' Billing Records

The District argues that Plaintiffs' motion should be denied entirely because the fee request is not supported by adequate billing records or other reliable evidence. Dkt. No. 24 at 11-12.

United States District Court
Northern District of California

Plaintiffs "bear the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Hensley*, 461 U.S. at 437.  Defendants have "a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1993).

Plaintiffs rely on the declaration of their counsel, Blanca Vaughn, in support of their motion for attorneys' fees.  Ms. Vaughn attaches to her declaration a document she attests is "a true and correct copy of [her] firm's invoices which accurately shows the hours [she] spent in the litigation under each of the underlying due process cases, with the exception of those unbillable hours [she] [has] eliminated in the exercise of [her] billing judgment."  Dkt. No. 23-2 ¶ 58, Ex. D.  According to Ms. Vaughn, fees requested exclude hours worked by a paralegal and a legal assistant, and also exclude purely administrative or clerical work, hours spent in intra-office meetings, time spent in telephone conversations with her clients and with the District's attorneys, and hours spent doing legal research.  *Id.*  In addition, Ms. Vaughn attaches to her declaration a document she says is an invoice "showing the hours [she] [has] expended and the work performed . . . in connection with this action."  *Id.* ¶ 62, Ex. E.  She further attests that "[t]he billing records in this matter were kept contemporaneously with work performed and entered using [her] firm's MyCase billing system."  *Id.* ¶ 57.

Apparently, at the conclusion of the administrative hearing process, on July 22, 2021, Ms. Vaughn sent the District a demand for reimbursement of "100%" of her fees, which included a printout of her billing records.  *See* Dkt. No. 24 at 10.  According to the District, "the majority" of the billing records Ms. Vaughn provided to the District on July 22, 2021 differ in material ways from the billing records on which Plaintiffs now rely for their motion.  *Id.* at 12; Dkt. No. 24-1, ¶¶ 16, 17, Exs. 11, 12.  The District argues that these discrepancies reflect that the billing records are not contemporaneous records of Ms. Vaughn's work but were instead altered for purposes of Plaintiffs' motion and are therefore unreliable.  Dkt. No. 24 at 11-12.

Plaintiffs' response to the District's argument is confusing.  They seem to suggest that the billing records shared with the District on July 22, 2021 reflected "a significant and substantial

United States District Court
Northern District of California

reduction of the fees" incurred, made for the purpose of negotiating a resolution of the parties' fee dispute, and that the billing records on which Plaintiffs now rely in support of their motion reflect yet further reductions. *See* Dkt. No. 29 at 4. However, in responding to the District's argument on this point, Plaintiffs announce in their reply that they will rely instead on a third set of records.[2] *Id.* at 5. The District objects to this new evidence submitted in connection with Plaintiffs' reply. Dkt. No. 30-2.

Plaintiffs' explanations for the discrepancies the District identifies in Ms. Vaughn's billing records do not make sense. While the exercise of billing judgment is often necessary and may result in deletion or reduction of billing entries contemporaneously prepared, the initial set of records on which Plaintiffs rely in support of their motion includes substantive alterations to the *descriptions* of the work Ms. Vaughn performed, and these alterations appear to be intended to bolster Plaintiffs' motion, even if the total amount reflected in the billing records is slightly lower than the demand Plaintiffs made to the District in July 2021. These alterations are concerning because they call into question the accuracy and reliability of the records as evidence of the nature and extent of the work Ms. Vaughn performed. Moreover, Plaintiffs' belated request to substitute another set of billing records in place of the records on which they initially relied for their motion is unfair to the District and an improper submission of new evidence in connection with their reply.[3] *See Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1104 (N.D. Cal. 2017) ("[C]ourts typically do not consider new evidence first submitted in a reply brief because the opposing party has no opportunity to respond to it.") (citing *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.

---

[2] Plaintiffs filed a late reply. Dkt. No. 29. Their counsel explains that she filed the reply a few days late because she was experiencing severe migraine headaches. Dkt. No. 28. Noting that Plaintiffs' counsel failed to comply with the Local Rules in filing the late reply and may have delayed longer than necessary, the District objects to the Court considering the late reply. Dkt. No. 30. Having considered the parties' arguments, and the many additional filings this late filing spawned, the Court will consider Plaintiffs' late-filed reply but no other subsequent filings.

[3] After filing the late reply, Plaintiffs made additional filings, including an "updated" billing invoice. *See* Dkt. Nos. 38, 40, 42. At the hearing, the District objected to these filings. The Court agrees that these filings are improper and were made without leave of the Court, and thus declines to consider them. *See* Civil L.R. 7-3(d).

1    1996)).

2          Had Plaintiffs endeavored in their reply to explain and correct the discrepancies the

3    District noted in its opposition, consideration of the belated submission reflecting those

4    corrections might be warranted.  But Plaintiffs' reply does not address the questions raised

5    regarding Ms. Vaughn's billing records or explain why the Court should conclude that the

6    proposed third set of billing records is accurate and reliable.

7          For these reasons, the Court will refer to the billing records Plaintiffs initially submitted in

8    support of their motion.  Dkt. No. 23-2, Exs. D, E.  The Court agrees with the District that the

9    billing records are not entirely reliable.  *See* Dkt. No. 24 at 5.  However, they are not so inadequate

10   that Plaintiffs' motion must be denied entirely.  Rather, the Court will take into account the

11   legitimate concerns the District raises about the reliability of Ms. Vaughn's billing records in

12   assessing whether the hours claimed are reasonable.

13         **C.      Reasonable Attorneys' Fees**

14         Plaintiffs ask the Court to award attorneys' fees and costs in the amount of $143,504.80,

15   representing "the expenses of a reasonable number of hours expended in litigating the underlying

16   administrative due process proceedings, hearing, and this action as charged at a reasonable rate,"

17   as of January 31, 2022.[4]  Dkt. No. 23 at 2.  The District argues that Plaintiffs' fee award should be

18   substantially reduced for several reasons.  Dkt. No. 24 at 12.

19         The Court first determines the number of hours reasonably expended by counsel for the

20   administrative proceedings and for this action, and then determines the reasonable hourly rate for

21   the work performed.

22         **1.      Reasonable Hours:  Administrative Proceedings**

23         In determining the number of hours reasonably expended, a court should exclude hours

24   that are not adequately documented, or that are excessive, redundant, or otherwise unnecessary.

25   *See Hensley*, 461 U.S. at 434; *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th

26   _____

27   [4] Plaintiffs state that "[t]his amount is to be increased by the attorney's fees and costs incurred in
     connection with this action after January 31, 2022."  Dkt. No. 23 at 2.  For the reasons discussed
28   above, the Court does not consider Plaintiffs' multiple, late submissions of billing records.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Cir. 1986).  "Hours that are not properly billed to one's client also are not properly billed to one's

2    adversary pursuant to statutory authority."  *Hensley*, 461 U.S. at 433.

3              a.    **"Excessive, Redundant, or Otherwise Unnecessary" Work**

4              The District points to several reasons why the Court should reduce the number of hours for

5    which Plaintiffs seek a fee award.  *First*, it argues that all hours worked related to Case 1 should

6    be excluded from the calculation because the case was dismissed at Plaintiffs' request.  Dkt. Nos.

7    24 at 13-14.  The District argues that because of the dismissal this Court lacks jurisdiction to

8    award fees associated with Case 1.  Dkt. No. 24 at 13.  *Alternatively*, the District argues that

9    Plaintiffs should not be allowed to collect fees for duplicative work performed in Case 1 and Case

10   2.  *Id.* at 16-19.  Plaintiffs generally respond that because the issues on which they prevailed in

11   Case 2 were also raised in Case 1, they are entitled to fees for Case 1.[5]  They do not specifically

12   address the District's arguments that certain hours for work performed in connection with Case 1

13   should be excluded from the award calculation as duplicative and unnecessary.  *See* Dkt. No. 29.

14             The Court disagrees with the District that it lacks jurisdiction to award fees for work

15   performed in connection with Case 1.  Rather, the question is whether work performed in Case 1

16   was repurposed for Case 2 without duplication and was necessary for successful prosecution of

17   Case 2.  For example, in *Cabrales v. County of Los Angeles*, the Ninth Circuit held that "a plaintiff

18   who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is

19   entitled to attorney's fees even for the unsuccessful stage." 935 F.2d 1050, 1053 (9th Cir. 1991).

20   As discussed below, the Court finds that some of the work performed on Case 1 was "a necessary

21   step to [Plaintiffs'] ultimate victory" in Case 2, but that Plaintiffs have not accounted for the

22   duplication of effort between Case 1 and Case 2.

23             If, as Plaintiffs contend, work performed for Case 1 was not duplicative of work performed

24   in Case 2, the billing records for Case 2 should not reflect duplicative billing.  The District makes

25   a persuasive showing that Plaintiffs seek fees for work performed in Case 2 that appears to be

26

27   [5] Plaintiffs do not respond to the District's jurisdiction argument.  Instead, they confusingly argue
     that they have exhausted their administrative remedies and so are entitled to attorneys' fees for
28   Case 1.  *See* Dkt. No. 29 at ECF 7-8.  The District does not challenge Plaintiffs' fee request for
     lack of exhaustion.

duplicative of work performed in Case 1.  *See* Dkt. No. 24-2, Exs. 14, 15.  Plaintiffs do not rebut this showing.  Accordingly, the Court excludes **19.1 hours** associated with work on Case 1 as duplicative and unnecessary in view of the hours claimed for work on Case 2.

*Second*, the District argues that any hours for work related to Plaintiffs' motion to reconsider the dismissal of Case 1 should be excluded.  Dkt. No. 24 at 17; Dkt. No. 24-2, Ex. 18. The Court agrees.  Case 1 was voluntarily dismissed at *Plaintiffs'* request.  The ALJ denied Plaintiffs' motion to reconsider and described it as "frivolous."  Dkt. No. 24-2 at 124 ("Student's counsel's request seeking an Order to undo her own withdrawal is frivolous.").  Accordingly, the Court excludes **7.5 hours** from the award calculation because it would be unreasonable to require the District to compensate Plaintiffs for hours expended on an unsuccessful and frivolous motion.

*Third*, the District argues that hours claimed for preparation of Plaintiffs' subpoenas in Case 2 should be excluded as excessive and unnecessary.  Dkt. No. 24 at 18; Dkt. No. 24-2, Ex. 21.  According to the District, Plaintiffs' subpoenas did not involve any drafting because Plaintiffs' counsel merely issued form subpoenas, and Plaintiffs did not call any of the subpoenaed witnesses to testify at the hearing in Case 2.[6]  Dkt. No. 24 at 18.  Plaintiffs do not rebut the District's arguments on this point.  *See* Dkt. No. 29.  The Court agrees that the hours expended in connection with these subpoenas were excessive and unnecessary.  Accordingly, the Court excludes **5.5 hours** from the award calculation.  *See S.H. v. Mount Diablo Unified Sch. Dist.*, No. 16-CV-04308-JCS, 2018 WL 510167, at 9 (N.D. Cal. Jan. 23, 2018) (excluding hours spent preparing subpoenas under questionable circumstances).

//

//

//

//

//

---

[6] The District also notes that the billing records for work performed in connection with these subpoenas were not created contemporaneously.  The Court addresses this concern in its discussion of reductions accounting for the insufficiency of Plaintiffs' billing records.

| | Hours claimed | Reductions |
|---|---|---|
| Hours Billed for Case 1 | 65.1 | |
| Hours Billed for Case 2 | 176 | |
| Case 1 Pleadings & Appearances | | 19.1 |
| Motion for Reconsideration | | 7.5 |
| Subpoenas | | 5.5 |
| **Sub-totals** | **241.1** | **32.1** |
| | | |
| **Reduced Hours Claimed for Admin. H'gs** | **209 hours** | |

**b.      Degree of Success**

Plaintiffs demand an award of *all* fees incurred during the administrative proceedings and in this action.  Dkt. No. 23 at 1-2.  The District contends that because Plaintiffs mostly did not prevail during the administrative proceedings in so far as they succeeded on only two of the many issues presented for hearing, their fee award should exclude time spent on unsuccessful claims and/or should be reduced to account for their limited degree of success.  Dkt. No. 24 at 20.

As a general matter, Plaintiffs may not obtain a fee award for hours worked on unsuccessful claims.  *Hensley*, 461 U.S. at 434-435.  However, where successful and unsuccessful claims are related, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* at 435; *see also Aguirre*, 461 F.3d at 1121.  Awarding fees for all hours expended on the litigation as a whole may be excessive if a plaintiff "has achieved only partial or limited success."  *Hensley*, 461 U.S. at 436.

Accordingly, the Court must first consider whether the claims on which Plaintiffs prevailed are related to the claims on which they did not prevail.  If the claims are unrelated, the hours calculation may not include time expended on the unsuccessful claims.  If the successful and unsuccessful claims are related, the Court must then consider the degree of success Plaintiffs obtained on those claims.  *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (describing the "two-part analysis" prescribed by *Hensley*).

United States District Court
Northern District of California

### i.    Relatedness of Successful and Unsuccessful Claims

The parties dispute whether all 40 issues argued in Case 2 are related.[7]  Despite acknowledging the analytical framework prescribed by *Thorne,* Plaintiffs do not directly address how the issues argued in Case 2 are related to *each other*.  *See* Dkt. Nos. 23, 29.  They instead argue only that the issues raised in Case 1 were also raised in Case 2.  The District argues that a bright line can be drawn between the issues held to be time-barred and those adjudicated on the merits.  Dkt. No. 24 at 22-23.

While the test for "relatedness" is not precise, claims that are related have a common core of facts or are based on the same or similar legal theories.  *Thorne*, 802 F.2d at 1141 (citing *Hensley*, 461 U.S. at 435).  Conversely, unrelated claims are based on different facts and legal theories.  *Id.*  "[C]ourts evaluating relatedness have considered whether the unsuccessful claims were presented separately, whether testimony on the successful and unsuccessful claims overlapped, and whether the evidence concerning one issue was material and relevant to the other issues."  *Thorne*, 802 F.2d at 1141 (citations omitted).

As described above, in conducting the proceedings in Case 2, the ALJ clarified Plaintiffs' claims into 40 different issues.  Dkt. No. 23-1 at 2.  Neither party objected to the issues as clarified.  *See* Dkt. No. 23-2 ¶ 40.  The ALJ then bifurcated the hearing into two distinct segments: Phase 1 addressed whether Plaintiffs could bring claims outside the statute of limitations, and Phase 2 addressed the merits of the issues that were not time barred.  The facts and legal theories necessary to overcome the District's statute of limitations defense were distinctly different from the facts and legal theories necessary to prove that the District had denied E.F. a FAPE.  Plaintiffs could have overcome the statute of limitations defense by either: (1) proving "specific misrepresentations that Morgan Hill had solved the problem forming the basis of the due process hearing request," through, for example, misrepresentation of assessment scores, failure to provide inaccurate information, or misrepresenting the Parents' rights under the IDEA, or (2) proving the

---

[7] Plaintiffs characterize the 40 issues as "5 main issues and 40 sub-issues."  Dkt. No. 23-2 ¶ 40.  For convenience, the Court generally refers to them simply as "issues."

District withheld notice of parents' rights and procedural safeguards at IEP team meetings. Dkt. No. 23-1 at 2, 11. Plaintiffs were required to present facts and legal theories that were distinctly different from those presented in support of the issues on which Plaintiffs' ultimately prevailed on the merits: that the District denied E.F. a FAPE by exiting him from special education without performing necessary assessments. The ALJ issued a ruling on Phase 1 of the bifurcated hearing before even proceeding with Phase 2. Moreover, during the two segments of the bifurcated hearing, Plaintiffs relied upon mostly distinct witnesses and different documentary evidence. Dkt. No. 24 at 23.

The Court concludes that the claims and issues addressed in Phase 1 of the administrative hearing in Case were unrelated to the claims and issues addressed in Phase 2. Because Plaintiffs did not prevail on the distinctly different claims related to overcoming the District's statute of limitations defense—and thus did not prevail on 21 of 40 issues in Case 2—the Court must reduce the hours for which Plaintiffs may recover fees. Plaintiffs' counsel's billing records do not clearly delineate the time expended on the time-barred claims.[8] As Phase 1 consumed over 50% of the hearing time, and as the ALJ's decision in Phase 1 barred over half of Plaintiffs' issues, the Court finds it appropriate to reduce the hours billed for the administrative hearings by 50%.

After the time-barred claims were excluded, the ALJ held a hearing on the merits of Plaintiffs' 19 remaining issues in Phase 2. These 19 issues concerned whether the District denied E.F. a FAPE during the 2018-19, 2019-20 and 2020-21 school years. *See* Dkt. No. 23-1 at 15-39. Plaintiffs prevailed on two of the remaining 19 issues. *Id.* at 47-48. The District argues that, even within these 19 remaining issues, the two issues on which Plaintiffs prevailed are unrelated to the others. *See* Dkt. No. 24 at 23. It points to the fact that the ALJ relied on only one out of 65 unique documentary exhibits admitted at the hearing in finding that Plaintiffs prevailed, and that only three out of six witnesses testified regarding the two successful claims. *Id.* It also suggests that the prevailing issues impacted only 19 weeks of the school year within the two-year window

---

[8] The District attempts to tally Plaintiffs' billing entries attributable to Phase 1 of Case 2. Dkt. No. 24-2, Ex. 22. The Court finds this list to be under-inclusive, however, in light of the substantial impact the ALJ's ruling regarding the statute of limitations had on Plaintiffs' claims.

considered by the ALJ, and that only a single act of the District denied E.F. a FAPE. *Id.* Plaintiffs do not directly argue that the 19 issues are related to each other, but they do generally assert that analyzing the issues at this level of granularity is improper. *See* Dkt. No. 29 at 10-11.

The Court agrees that the District's parsing of the record for evidence tied to successful and unsuccessful claims is not persuasive. While the bifurcation of the hearing into time-barred and non-time-barred issues clearly sorts the issues based on their distinct facts and legal theories, the same clarity does not exist with respect to the remaining 19 issues in Phase 2 of the hearing. Half of the witnesses in this phase testified about the issues on which Plaintiffs prevailed, and as the District concedes, these witnesses testified broadly. *See* Dkt. No. 24 at 23. This suggests significant overlap between the facts pertaining to these two issues and the 17 other issues adjudicated in Phase 2. In addition, the ALJ characterized the dispute in a manner that suggests she considered all 19 issues related. While the District describes the dispute as a failure of the parents to consent to the special education services offered by the District, and the exiting of E.F. from special education as merely the result of that lack of consent, the ALJ disagreed. In her opinion addressing the two issues on which Plaintiffs prevailed, she wrote:

> The dispute here was not over eligibility or that Parent did not consent to special education. In fact, the evidence overwhelmingly showed that both parties agreed Student was eligible for special education and wanted Student to receive services. *Here, the dispute is over the types of related services and supports offered to Student, and what assessments should be conducted.*
>
> Once a child is found eligible for special education, unless specific statutory exceptions apply, a local educational agency shall evaluate a child with a disability before determining that the child is no longer a child with a disability. Once the local educational agency properly completes the reassessment, it is required to develop an appropriate IEP or disqualify the student if the reassessment demonstrated that the child was no longer eligible for special education services.
>
> The evidence demonstrated that on October 8, 2020, Morgan Hill sent a letter with a copy of parental rights and procedural safeguards to Parent informing Parent that based upon its attempts to gain consent to special education services, and Parent's refusals, it would discontinue any further attempts, and Student would be treated as a general education Student. However, as already determined, Student was a special education student at that time. Thus, Morgan Hill failed to assess Student to exit Student from special education eligibility as legally required. Accordingly, Student proved by the

> preponderance of the evidence that Morgan Hill impermissible [sic] exited Student from special education on October 20, 2020, which is a procedural violation under the IDEA.

Dkt. No. 23-1 at ECF 17-18 (emphasis added) (citations omitted).

While the ALJ organized the issues presented in Case 2 into 40 issues "for the purpose of analysis and clarity of [her] decision," she described the merits dispute as requiring a determination of what services the District should have offered and what assessments it should have conducted. This description reinforces the Court's conclusion that the 19 issues adjudicated on the merits in Phase 2 are related. Accordingly, the Court must next examine the degree of success Plaintiffs achieved on those related claims.

### ii.      Degree of Success on Related Claims

In assessing reasonable attorneys' fees, a court may not use a purely mathematical approach based on the number of successful and unsuccessful claims. "Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Hensley*, 461 U.S. at n.11. "There is no precise rule or formula for making these determinations. The district court . . . may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436-37. Courts in the Ninth Circuit regularly reduce fee awards in IDEA cases based on a prevailing party's limited degrees of success. *M.M. v. Lafayette Sch. Dist.*, No. CV 09-4624, 2012 WL 3257662, at *10 (N.D. Cal. Aug. 8, 2012).

During Phase 2, the ALJ considered the many ways in which Plaintiffs contended the District had denied E.F. a FAPE. These included, for example, whether the District provided certain assessments at the appropriate times, whether it issued timely written notices to E.F.'s parents, whether it failed to respond to third-party assessment requests, and whether it failed to provide the parents with notice of procedural safeguards. Dkt. No. 23-1 at ECF 15, 19, 33, 35. As discussed above, Plaintiffs prevailed only on two of their contentions. The ALJ held that "Morgan Hill's failure to properly exit Student from special education and related services denied Student a FAPE," and that "Morgan Hill denied Student a FAPE by failing to assess Student before exiting Student [from special education] on October 20, 2020." Dkt. No. 23-1 at ECF 19-20.

However, in addition to considering the contentions on which Plaintiffs prevailed, the

16

United States District Court
Northern District of California

1   Court also must consider "'the extent of relief ordered by the ALJ' in order to determine the

2   degree of success." *L.R. v. Hollister Sch. Dist.*, No. 5:13-MC-80085-EJD, 2014 WL 1118019, at

3   *6 (N.D. Cal. Mar. 19, 2014) (quoting *S.A. v. Patterson Joint Unified Sch. Dist.*, 2010 WL

4   3069204 (E.D. Cal.2010) at *13); *see Hensley*, 461 U.S. at 440; *Aguirre*, 461 F.3d at 1117–21;

5   *Thorne*, 802 F.2d at 1141; *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451

6   (9th Cir. 2015).  During the administrative proceedings, Plaintiffs requested the following relief:

7   (1) "independent educational evaluations" in eight substantive areas; (2) placement in a non-public

8   school; (3) transportation; (4) compensatory education totaling 170 hours; (5) a one-to-one aide;

9   (6) counseling for 90 minutes per week; (7) speech services for 90 minutes per week; (8)

10  "unspecified electronic equipment"; (9) a special facilitator at all IEP team meetings; (10)

11  reimbursement for expenses during E.F.'s attendance at private school during the 2018-19 school

12  year; (11) and attorneys' fees.  Dkt. No. 23-1 at ECF 48.  The ALJ granted only a portion of this

13  relief, ordering: (1) reinstatement of E.F. as eligible for special education under the categories of

14  specific learning disabilities and other health impairment; (2) assessment of E.F. in only three

15  substantive areas; (3) that an IEP team meeting be held to review the assessments; and (4)

16  compensatory education of "35 hours of individual specialized academic instruction, outside of the

17  regular school day, by a credentialed special education teacher."  *Id.* at ECF 49-50.  However, the

18  relief granted is significant.  As discussed above, the relief reinstated E.F. as eligible for the

19  District's special education program and provided a significant amount of compensatory

20  education.  Plaintiffs achieved a substantial shift in E.F.'s educational program and circumstances,

21  even though Plaintiffs unsuccessfully pressed multiple additional claims and sought substantial

22  additional relief that the ALJ did not grant.

23          In light of the outcome achieved in relation to the relief sought and the claims presented in

24  Phase 2, and accounting for the unreliability of Ms. Vaughn's billing records, the Court finds that

25  a further 50% reduction is warranted and not the more substantial reduction for which the District

26  advocates.  *See G.R. v. Brentwood Union Sch. Dist.*, No. 12-CV-06326-JST, 2013 WL 3369259, at

27  *5 (N.D. Cal. July 5, 2013) (reducing an award due to limited success despite the interrelatedness

28  of plaintiff's claim).  In other words, after factoring in the reduction of hours worked to account

United States District Court
Northern District of California

1  for the unrelated time-barred claims, the Court will reduce by 50% the remaining hours

2  attributable to work on the merits issues in Case 2.

3  **2.      Reasonable Hours:  District Court Action**

4          Plaintiffs also seek attorneys' fees for the work performed in this action.  Dkt. No. 23 at 3.

5  In support of this request, Plaintiffs rely on billing records reflecting a total of 70.1 hours worked

6  on this matter.  Dkt. No 23-2, Ex. E.  The District does not challenge any of the individual billing

7  entries, but argues that Plaintiffs' fee award should be reduced in proportion to their degree of

8  success.  Dkt. No. 24 at 28.

9          Where fees awarded for work on the merits of a case are reduced commensurate with the

10  degree of success a party attains, a request for "fees-on-fees" may be reduced to the same extent.

11  *Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir. 1995) (the principles of *Hensley* apply to fees-

12  on-fees and "support the district court's decision not to award fees-on-fees for time spent pursuing

13  unsuccessful merits fees demands."); *Schwarz v. Secretary of Health & Hum. Servs.*, 73 F.3d 895,

14  909 (9th Cir. 1995) (concluding that "the district court was well within its discretion in awarding

15  50% of the fees-on-fees requested because this ratio actually exceeded the percentage by which

16  Schwarz prevailed on her request for merits fees"); *Harris v. McCarthy*, 790 F.2d 753, 757–59

17  (9th Cir. 1986) (holding that the district court did not abuse discretion by awarding fees-on-fees in

18  the same 11.5% ratio it had awarded merits fees); *L.R.*, No. 5:13-MC-80085-EJD, 2014 WL

19  1118019, at *7 (reducing fees for work in an IDEA case at the district court by the same

20  percentage as the reduction for the administrative proceedings); *Barnes v. AT&T Pension Benefit

21  Plan-Nonbargained Program*, 963 F. Supp. 2d 950, 981–82 (N.D. Cal. 2013) (reducing fees-on-

22  fees in same 14.2% ratio as merits fees).

23          Therefore, in view of Plaintiffs' degree of success during the administrative proceedings,

24  the Court reduces the hours for which fees may be awarded for work performed in this action by

25  50%—the same reduction the Court applies to hours attributable to Phase 2 of the administrative

26  proceedings in Case 2.  Plaintiffs shall be awarded fees for 35 hours at the district court level.

27  //

28  //

### a.      Summary of Reasonable Hours Worked

| Hours Claimed for Admin. H'gs | 209 hours |
|---|---|
| 50% Reduction: Time-Barred Claims | |
| 50% Reduction: Degree of Success | |
| **Total Reasonable Hours for Admin. H'gs** | **52.3 hours** |

| Hours Claimed for Dist. Ct. Action | 70.1 hours |
|---|---|
| 50% Reduction: Degree of Success | |
| **Total Reasonable Hours for Dist. Ct. Action** | **35 hours** |

| Total Reasonable Hours for Admin. H'gs | 52.3 hours |
|---|---|
| Total Reasonable Hours for Dist. Ct. Action | 35 hours |
| **Total Reasonable Hours** | **87.3 hours** |

### 3.      Reasonable Hourly Rate

"In determining a reasonable hourly rate, a court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  *Blum*, 465 U.S. at 896 n.11.  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiffs argue that Ms. Vaughan's time should be compensated at a rate of $450 per hour for her work on the administrative proceedings and $475 per hour for her work before this Court. Plaintiffs rely on Ms. Vaughn's declaration, the declarations of three attorneys practicing special education law, Jean Murrell Adams (Dkt. No. 23-3), Natashe Washington (Dkt. No. 23-4), and Lina Foltz (Dkt. No. 23-5), and the declaration of Richard M. Pearl who purports to have surveyed

United States District Court
Northern District of California

the billing rates awarded to large San Francisco law firms (Dkt. No. 23-6). The District argues that Ms. Vaughan fails to meet her burden to produce evidence that the hourly rates she seeks are commensurate with those in the community, and that she should receive no more than $400 per hour for work performed at the administrative level and in this action. Dkt. No. 24 at 14-15. The District challenges the supporting declarations because, it contends, those declarants' rates do not reflect the rates actually awarded by courts. *See id.* The District also challenges the declaration of Mr. Pearl as referring to rates for work that differs from the work performed by Ms. Vaughan. *Id.*

### a.    Ms. Vaughan's Declaration

Ms. Vaughan is a sole practitioner. Dkt. No. 23-2 ¶ 1. She has been practicing law for over 20 years, having been admitted to the California bar in 2001. *Id.* ¶ 3. She began her career as an associate specializing in workers' compensation and employment discrimination claims for a San Francisco-based law firm, and she made frequent court appearances early in her career. *Id.* ¶ 5. In 2004 she started her own practice. *Id.* ¶ 6. Since 2007 she has practiced immigration law, representing clients before administrative tribunals and in federal court. *Id.* ¶ 8. She began also representing special education clients in 2014, and in addition to her own practice, she has worked for declarant Ms. Adams on an ad hoc basis since then. *Id.* ¶¶ 10, 15-16. Ms. Vaughan states that she has "handled and managed hundreds of special education cases independently." *Id.* ¶ 18. She states that her hourly rate was $400 per hour in 2018 and $450 per hour in 2019 for special education-related administrative proceedings. *Id.* ¶ 21. Her rate for federal district court work was $475 per hour until January 2022, when she increased her rate for that work to $500 per hour. *Id.* Ms. Vaughan does not identify any cases in which a court has awarded attorneys' fees at any of these rates for her work.

### b.    Practitioners' Declarations

Ms. Adams is an experienced litigator with 20 years of experience practicing special education law. Dkt. No. 23-3 ¶ 2. Her firm has represented over 2000 children with special needs in administrative proceedings, federal district court, and federal courts of appeal. *Id.* Ms. Adams states that she is "personally very familiar with [Ms. Vaughn's] remarkable reputation within the special education law community." *Id.* ¶ 6. Ms. Adams's current hourly billing rate is $600 per

hour.  *Id.* ¶ 6.  She does not indicate whether any court has awarded her fees at that rate or any other rate.

Ms. Washington has also been practicing law for over two decades and has over 10 years of experience in special education law.  Dkt. No. 23-4 ¶ 6.  She states that she is familiar with Ms. Vaughan's work but does not directly comment on its quality.  *Id.* ¶ 9.  *Id.*  Ms. Washington's current billing rate is $475.  *Id.* ¶ 7.  She does not indicate whether any court has awarded her fees at that or any other rate.

Ms. Foltz is a sole practitioner who has represented students and parents since 2002.  Dkt. No. 23-5 ¶ 2-3.  She has been practicing law for 29 years, and she has been a lead attorney in over 60 cases.  *Id.* ¶ 4.  She has charged a rate of $525 per hour since 2017 and has "recovered attorney fees at that rate from multiple school districts by stipulation, settlement agreement and by court order since that time."  *Id.* ¶ 5.  Ms. Foltz does not identify the cases in which she says a court has awarded her fees at that rate.

Both Ms. Adams and Ms. Washington attest that Ms. Vaughan's rates are well within the reasonable range of the currently prevailing rates of this legal community for special education-related work.  Dkt. Nos. 23-3 ¶ 6, 23-4 ¶ 11.  And both Ms. Adams and Ms. Washington state that up to 400 hours would have been a reasonable amount of time to spend on this case under these particular circumstances.  Dkt. Nos. 23-3 ¶ 10, 23-4 ¶ 10.

### c.    Mr. Pearl's Declaration

In contrast to the practitioners, Mr. Pearl does not practice in the area of education or special education law.  Instead, Mr. Pearl says that he "specialize[s] in issues related to court-awarded attorneys' fees."  Dkt. No. 23-6 ¶ 1.  He has over 50 years' experience as an attorney, with 40 years focusing on cases and appeals involving court-awarded attorneys' fees.  *Id.* ¶ 3.  In this case, he says Ms. Vaughan asked him to "render [his] opinion on the reasonableness" of the requested hourly rates—*i.e.* to provide expert testimony.  *Id.* ¶ 1.

Although Mr. Pearl declares that Ms. Vaughan's rate is "consistent with the rates prevailing for . . . vigorously contested administrative hearings," *id.* ¶ 14, his declaration does not provide any indication that he is qualified to make this assessment, and his declaration is

otherwise not helpful.  *See* Fed. R. Evid. 702, 703.  Mr. Pearl does not cite a rate from a single case that involved the IDEA or similar administrative proceedings.  Instead, he points to rates awarded in cases involving complex federal litigation.  For example, he cites a $750 per hour rate awarded in *Wit v. United Behavioral. Health*, 578 F. Supp. 3d 1060 (N.D. Cal. 2022).  *Id.* ¶ 15.  But *Wit* was an ERISA class action with two different law firms acting as class counsel and at least 12 partners working on the case.  Similarly, he cites $910 per hour and $815 per hour rates awarded in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, No. 16-CV-00236-WHO, 2020 WL 7626410 (N.D. Cal. Dec. 22, 2020).  *Id.*  But *Planned Parenthood* was a RICO action in which "[m]ore than 130 attorneys worked on the case for plaintiffs and 22 of them billed more than 250 hours each."  *Planned Parenthood*, No. 16-CV-00236-WHO, 2020 WL 7626410, at *1.  And he cites a $625 per hour rate awarded in *Human Rights Defense Center v. County of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021).  *Id.*  But *Human Rights Defense* was a complicated prisoner's rights action in which six attorneys represented the plaintiff.

Mr. Pearl attaches to his declaration an extensive list of rates awarded in "San Jose Area Cases" in the past few years.  Dkt. No. 23-6, Ex. B.  None of the cases referenced, however, is an IDEA case.  He also attaches "rates charged by San Francisco Bay Area Law Firms," Dkt. No. 23-6, Ex. C, and a 2020 "Real Rate Report (The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices)," Dkt. No. 23-6, Ex. D.  Neither of these exhibits is helpful, as they do not include any information about the prevailing rates in the community for work performed by attorneys of comparable skill, experience, and reputation to Ms. Vaughn in the area of education or special education law or comparable areas of practice.

### d.    Calculation of Reasonable Hourly Rate

"That other attorneys may think that a given rate is 'reasonable' does not necessarily say what the prevailing market rates actually are.  That is especially true when the opinions are expressed by attorneys whose own professional interests might motivate them to favor higher rates." *Sam K.*, 788 F.3d at 1041.

As best this Court can discern, Ms. Vaughn, Ms. Adams, Ms. Washington, and Ms. Foltz

United States District Court
Northern District of California

have not obtained fee awards at the hourly rates to which they refer in their declarations.  Indeed, the Court has been unable to locate *any* case in which any of these practitioners has been awarded fees calculated at a rate higher than $410 per hour.  *See, e.g., S.H.*, 2018 WL 510167, at *9 (Ms. Washington awarded $410 per hour); *LaToya A. v. San Francisco Unified Sch. Dist.*, No. 3:15-CV-04311-LB, 2016 WL 344558, at *12 (N.D. Cal. Jan. 28, 2016) (Ms. Adams awarded $410 per hour); *M.M. v. Lafayette Sch. Dist.*, No. CV 09-4624, 2012 WL 3257662 (N.D. Cal. Aug. 8, 2012) (Ms. Foltz awarded $300 per hour).  The Court's review of these and other cases suggests that attorneys working in the same area as Ms. Vaughn in the Northern District of California have been awarded attorneys' fees based on rates in the range of $325 per hour to $410 per hour.  *See, e.g., Tamalpais Union High Sch. Dist. v. D. W.*, No. 16-CV-04350-HSG, 2019 WL 1332396, at *5 (N.D. Cal. Mar. 25, 2019) (awarding a rate of $325 per hour).  However, some of these cases pre-date the work performed by Ms. Vaughn in this matter by several years and therefore may not be a suitable benchmark for assessing the reasonable hourly rate in this case.  Moreover, the practitioners say that they have actually charged the rates to which they refer and obtained recovery of fees at those rates in settling disputes.  In view of the available caselaw, and considering the declarations of Ms. Vaughn and the three practitioners in the same field, the Court concludes that $425 per hour is a reasonable hourly rate for Ms. Vaughan's work in connection with the administrative proceedings.

The Court has considered whether Ms. Vaughan's time for work performed at the district court level should be compensated at a higher hourly rate, as Plaintiffs request.  The Court concludes that a higher hourly rate is not warranted.  Ms. Vaughan's work before this Court has not met the standards the Court expects of counsel admitted to practice in the Northern District of California.  For example, Ms. Vaughn filed late and extraneous briefing without first obtaining leave of the Court; submitted inconsistent billing statements without adequate explanation, leaving the Court to sift through and reconcile the statements on its own; failed to comply with the Civil Local Rules; and was not well prepared for the hearing on Plaintiffs' motion.  An hourly rate of $475 would be unreasonable under the circumstances, and for this reason the Court will use the same rate of $425 per hour to calculate fees for the work performed in this action.  *See Tamalpais*,

No. 16-CV-04350-HSG, 2019 WL 1332396, at *4-5 (awarding the same rate for work at the district court as work done in administrative proceedings).

### D.    Costs

The IDEA allows for recovery of only those costs allowable pursuant to 28 U.S.C. § 1920. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 298 (2006). The use of the term "costs" in the IDEA "was not meant to be an open-ended provision that makes participating States liable for all expenses incurred by prevailing parents in connection with an IDEA case—for example, travel and lodging expenses or lost wages due to time taken off from work." *Id.* at 297. Section 1920 allows the recovery of costs for: (1) clerk and marshal fees; (2) fees for transcripts "necessarily obtained for use in the case"; (3) printing and witness fees; (4) fees for copying materials "necessarily obtained for use in the case"; (5) docket fees; and (6) compensation of court appointed experts and interpreters. *See* 28 U.S.C. § 1920. A request for costs must be accompanied by an affidavit that each item is "correct and has been necessarily incurred in the case." 28 U.S.C. § 1924; Civil L.R. 54-1; *see also Tamalpais*, No. 16-CV-04350-HSG, 2019 WL 1332396, at *4-5 (denying costs where no supporting material was included by plaintiff to demonstrate costs were necessarily incurred).

In the administrative proceedings, Plaintiffs claim to have incurred costs related to making copies and printing materials, mailing materials, and organizing exhibits for the administrative hearing, totaling $617.10. Dkt. No. 23-2, Ex. D. Before this Court, Plaintiffs claim to have incurred costs related to filing and serving their motion, accessing the Court's online docket, making copies, and mailing materials, totaling $915.20. Dkt. No. 23-2, Ex E. The District contends that all requested costs should be denied as unrecoverable and not requested in accordance with federal law and this district's Local Rules. Dkt. No. 24 at 20.

Although some of the costs claimed by Plaintiffs are within the ambit of § 1920, Plaintiffs have not certified in any supporting declaration that any of the costs in any proceeding were "necessarily incurred" or provided a sufficient explanation regarding the necessity of incurring any of these costs. Accordingly, the Court denies Plaintiffs' request for all costs except for the district court filing fee of $402.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### E.     Effect of the District's Settlement Offer

Under the IDEA, if a parent rejects a school district's valid offer to settle the administrative proceedings and then obtains relief in the proceedings that is less favorable than the offer of settlement, the parent may not recover fees incurred after the date of the offer.  20 U.S.C. § 1415(i)(3)(D)(i)(I)-(III).  "Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer."  *Id.* § 1415(i)(3)(E).

The District made an initial offer to settle Plaintiffs' "Case 1" on February 19, 2021.  Dkt. No. 23-2, Ex. A.  Case 1 concluded on February 22, 2021, when Plaintiffs requested that it be dismissed without prejudice at the prehearing conference and the ALJ granted the request. Despite the dismissal, Plaintiffs apparently responded to the District's offer with a counter-offer.[9] The District rejected Plaintiffs' counter-offer and made a second offer dated March 12, 2021.  Dkt. No. 23-2, Ex. B.  This offer was essentially a reiteration of the District's offer dated February 19, 2021, with the promise of one additional diagnostic assessment for E.F.  *Cf.* Dkt. No. 23-2, Ex. A *with* Dkt. No. 23-2, Ex. B.  Plaintiffs apparently did not respond to the District's second offer, and instead filed their Case 2 complaint on April 5, 2021.  A hearing on that complaint was not held until June 2, 2021.

The parties dispute whether the District's offers to settle were valid under the IDEA and, if so, whether they preclude Plaintiffs' recovery of attorneys' fees.  The District argues that the Court should not permit Plaintiffs to recover any fees incurred after February 19, 2021, the date of the District's first offer.  Dkt. No. 24 at 25.  The District does not acknowledge its second offer in its papers, but it asserts, without citing any authority, that its February 19 offer was timely.  Dkt. No. 24 at 26.  Plaintiffs argue that both of the District's offers are invalid because they were not timely.  In the alternative, Plaintiffs argue that, if the District's offers were timely, Plaintiffs were substantially justified in rejecting them. Dkt. No 23 at 19-20.

In order for an offer to be valid it must be made "more than 10 days before the proceeding

---

[9] Plaintiffs' counter-offer is not in the record.

United States District Court
Northern District of California

begins." 20 U.S.C. § 1415(i)(3)(D)(i)(I).  "The fact that [an] offer was made prior to the filing of [a] due process complaint does not render [an] offer invalid for IDEA purposes."  *Wright v. Tehachapi Unified Sch. Dist.*, No. 1:16-CV-01214-JLT, 2017 WL 3334015, at *10 (E.D. Cal. Aug. 4, 2017), *aff'd*, 743 F. App'x 125 (9th Cir. 2018); *see also Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 208 (5th Cir. 2011) ("IDEA does *not*, however, require a proceeding to have begun before a settlement offer can be made.  Instead . . . § 1415(i)(3)(D)(i) applies when 'the offer is made . . . in the case of an administrative proceeding, *at any time more than 10 days before the proceeding begins*.'") (emphasis in original).  Therefore, because both of the District's offers were made "more than 10 days before the proceeding" began, as the IDEA requires, the Court finds that the District made a valid offer of settlement under the IDEA.

Accordingly, the Court must consider (1) whether the relief Plaintiffs ultimately obtained was less favorable than the District's offer, and (2) whether Plaintiffs were substantially justified in rejecting the offer.

### 1.      Relief Ultimately Obtained

The parties dispute whether the relief Plaintiffs obtained at the administrative hearing was more favorable than the District's settlement offer.[10]  The District argues that their offer was more favorable than the relief ultimately obtained because it provided a broader range of special education assessments over a shorter time frame, it envisioned the immediate provision of services, and it included a lump sum of $5,000.  Dkt. No. 24 at 26-27.  While the district acknowledges that the total number of hours of services provided in the offer was less than the ALJ awarded, they argue that the concentrated period in which those services would have been provided "would have provided greater academic benefit" to E.F.  *Id.* at 27.  Plaintiffs argue that the relief they ultimately obtained was more favorable than what the District offered because (1) the ALJ awarded a greater number of hours of compensatory education, (2) the compensatory education awarded was individualized academic instruction from a credentialed special education teacher, and (3) the District's offer expressly required Plaintiffs to bear their own attorneys' fees.

---

[10] For purposes of comparison, the Court refers to the District's March 12, 2021 offer.

United States District Court
Northern District of California

1    *See* Dkt. No. 23 at 20-22.

2        The IDEA "specifies that the comparison of the settlement offer versus the result of

3    litigation must be made from the perspective of the parents." *T.B. ex rel. Brenneise v. San Diego*

4    *Unified Sch. Dist.*, 806 F.3d 451, 476 (9th Cir. 2015).  For the following reasons, the Court finds

5    that the relief Plaintiffs ultimately obtained was more favorable than the District's settlement

6    offer.

7        *First*, the ALJ awarded Plaintiffs a greater number of hours of compensatory education for

8    E.F. than the District offered.  "Compensatory education is an equitable remedy that seeks to make

9    up for 'educational services the child should have received in the first place,' and 'aim[s] to place

10   disabled children in the same position they would have occupied but for the school district's

11   violations of IDEA.'"  *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th

12   Cir. 2011) (citing *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 518 (D.C.Cir.2005)).  The

13   ALJ awarded Plaintiffs 35 hours of compensatory education, which was not restricted by academic

14   subject.  Dkt. No. 23-1 at ECF 51-52.  E.F. is entitled to use the compensatory education through

15   July 31, 2023.  *Id.*  The District compares its offer of "27 combined hours of RSP, speech and OT

16   services" to the ALJ's award of compensatory education, but the offer falls short, not only in

17   amount but in kind.  Dkt. No. 24 at 27 ("[W]hile the total hours of services under the offer, [sic]

18   were slightly less than those ordered . . . they were offered within a concentrated 90-day period, as

19   opposed to spread out over two years.").  The hours of services the District offered are not the kind

20   of unrestricted "specialized academic instruction" the ALJ ordered.  The District offered only

21   "diagnostic placement evaluation" equal to a total of 18 hours of RSP (Resource Support

22   Program), 4.5 hours of speech therapy, and 4.5 hours of occupational therapy.  *See* Dkt. No. 23-2,

23   Ex. B.  The District's offer expressly states that "[i]t is understood these services are provided

24   solely as part of the assessment process . . . to identify an appropriate placement and services for

25   student."  *Id.*  This proposal does not compare favorably to the individualized academic instruction

26   the ALJ awarded.  In any event, the number of hours of services the District offered was less than

27   80% of the hours of services the ALJ awarded.  The Court is not persuaded that providing the

28   hours of services over a shorter time period, as the District offered, warrants a finding that the

offer was more favorable than the award Plaintiffs ultimately obtained.

*Second*, the compensatory education the ALJ ordered will be provided on an individualized basis, outside regular school hours, by a credentialed special education teacher.  To the extent that the service hours offered by the District may be considered compensatory education, the District did not specify that the service hours would be individualized or that they would be provided by a special education teacher.  Rather, as best the Court can discern, it appears that the District intended to provide these services in group settings during the school day.  *See* Dkt. No. 23-2, Ex. B (describing the assessments).  Plaintiffs emphasize that, besides reinstatement into special education, they sought individualized tutoring to help with E.F.'s "low academic performance." *See* Dkt. No. 23 at 6, 8-9.  Therefore, the individualized nature of the compensatory education awarded, evaluated from the perspective and desires of the Parents, was more favorable than what the District offered.

*Third*, the District's offer specified that "[e]ach party . . . shall bear its own costs and attorneys' fees incurred or connected with the drafting and signing of the Agreement and the events leading up to the Agreement."  Dkt. No. 23-2, Ex. B.  While the ALJ did not award Plaintiffs attorneys' fees, by declining the District's offer, Plaintiffs retained the right to seek an award of fees and costs.  This consideration suggests the District's offer was not more favorable than the relief Plaintiffs obtained.  *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 478 (9th Cir. 2015) ("By declining the offer, [plaintiff] retained the right to seek an award of fees and costs. In that way, the offer was less favorable than the relief obtained.").

*Finally*, the District argues that the $5,000 lump sum included in its offer "could have purchased well over 100 hours of specialized services of Parents' choosing."  While this may be a correct statement, the District's perspective fails to account for the non-monetary advantages of the ALJ's award of compensatory education.  For example, it fails to account for time parents may need to spend arranging for third-party tutoring, time a child may need to spend on the wait-list of a tutoring company, or time parents may need to spend shuttling their student from school to an off-site tutoring location.  The ALJ's award, by requiring the District to provide compensatory education at school with a credentialed special education teacher, short-circuited the potential

United States District Court
Northern District of California

1     challenges Plaintiffs may face in securing additional, specialized education for E.F. on their own.

2     The Court thus finds the $5,000 lump sum component of the District's offer does not compare

3     favorably to the relief the ALJ awarded.

4                          **2.**          **Substantially Justified**

5        Setting aside whether the relief obtained by Plaintiffs was more favorable than the relief

6     provided in the District's settlement offer, the parties dispute whether Plaintiffs were substantially

7     justified in rejecting the offer.  The District argues that in order for Plaintiffs to show they were

8     substantially justified in rejecting the offer they must demonstrate a good faith and reasonable

9     belief that their eventual recovery would be more favorable than the offer.  Dkt. No. 24 at 27.

10     Plaintiffs argue that the express exclusion of attorneys' fees from the District's offer makes them

11     substantially justified in rejecting it.  Dkt. No. 23 at 22.

12        "An award of attorneys' fees and related costs may be made to a parent who rejects a valid

13     settlement offer and ultimately becomes a prevailing party if the court finds that the rejection was

14     substantially justified."  20 U.S.C. § 1415(i)(3)(E).  "There is little precedent interpreting the

15     phrase 'substantially justified,' but examples from other cases include situations where the offer

16     failed to cover the parents' attorney fees, where the parent had a good faith, reasonable belief that

17     their eventual recovery would be higher than the offer, and where a relevant pending court action

18     could have affected the favorability of the settlement terms.  *Beauchamp v. Anaheim Union High*

19     *Sch. Dist.*, 816 F.3d 1216, 1222 (9th Cir. 2016) (citations omitted).  "[A]n offer of a mere pittance

20     in attorney's fees does not trigger that section of the statute that precludes an award of attorney's

21     fees for time spent on the case after the settlement offer was made if the plaintiff ultimately

22     secures no more relief [than] that which was originally offered."  *S.H.*, No. 16-CV-04308-JCS,

23     2018 WL 510167, at *6 (quoting *Brighthaupt v. D.C.*, 36 F.Supp.3d 1, 9 (D.D.C. 2014)); *see also*

24     *Dicks v. D.C.*, 109 F.Supp.3d 126, 131 (D.D.C. 2015) ("A settlement offer that compensates

25     counsel for a mere fraction for its efforts deters parents from exercising their due process rights

26     and, as such, is inimical to the IDEA's purpose.").

27        Here, as noted above, the District's offer required the parties to bear their own costs and

28     attorneys' fees.  By February 19, 2021, the date of the District's first offer, Plaintiffs state they had

1   already incurred over $29,000 in attorneys' fees.  Dkt. No. 23 at 22.  By March 15, 2021, the date

2   of the District's second offer, Plaintiffs say they had incurred over $30,000 in attorneys' fees.  The

3   record supports these figures.  *See* Dkt. No. 23-2, Ex. D.  Based on the information they had at the

4   time of the District's offer, Plaintiffs believed they had incurred a substantial amount in attorneys'

5   fees.  With this understanding, Plaintiffs rejected the District's offer because it did not come close

6   to covering their expenses.

7         In these circumstances, the Court concludes that, even if the relief Plaintiffs ultimately

8   obtained was less favorable than the District's settlement offer, Plaintiffs were substantially

9   justified in rejecting that offer.

10  **IV.    CONCLUSION**

11        The Court awards Plaintiffs fees in connection with both the administrative hearing and

12  this district court action.  For the administrative proceedings, multiplying the reasonable number

13  of hours, 52.3 hours, *see* Section III.C.1, by the reasonable hourly rate of $425 per hour, results in

14  a fee award of $22,227.50.  For the proceedings in this Court, multiplying the reasonable number

15  of hours, 35 hours, *see* Section III.C.2, by the reasonable hourly rate of $425 per hour results in a

16  fee award of $14,875.  The Court therefore awards Plaintiffs a total of $37,102.50 in attorneys'

17  fees and $402 in costs.

18        **IT IS SO ORDERED.**

19  Dated: September 21, 2022

20

21

22  _____
    VIRGINIA K. DEMARCHI
    United States Magistrate Judge